IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

CEDRIC FRANKLIN,

Plaintiff,

vs. No. 07-2329-JDB/tmp

TENNESSEE BOARD OF PROBATION AND PAROLES, et al.,

Defendants.

---

ORDER ASSESSING $350 CIVIL FILING FEE
ORDER OF DISMISSAL
ORDER DENYING APPOINTMENT OF COUNSEL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

---

On November 16, 2006, Plaintiff Cedric Franklin, Tennessee Department of Correction ("TDOC") prisoner number 230639, who is an inmate at the West Tennessee State Prison ("WTSP") in Henning, Tennessee, filed a joint pro se complaint pursuant to 42 U.S.C. § 1983, along with four other inmates, accompanied by a motion seeking appointment of counsel. That action was docketed as case no. 06-2784. The Court issued an order on May 3, 2007 severing the cases. This case was opened on May 3, 2007. The Clerk shall record the defendants as the Tennessee Board of Probation and Paroles (the "Board") and the individual members of the Board, Charles Traughber, Lynn Duncan, Larry Hassell, James Austin, Patsy Bruce, Ronnie Cole, and Bill Dalton.

I. Assessment of Filing Fee

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(b), all prisoners bringing a civil action must pay the full filing fee of $350 required by 28 U.S.C. § 1914(a). The in forma pauperis statute, 28 U.S.C. § 1915(a), merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

In this case, Plaintiff has properly completed and submitted an in forma pauperis affidavit containing a certification by the inmate trust fund officer and an inmate trust fund account statement. Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that Plaintiff cooperate fully with prison officials in carrying out this order. It is further ORDERED that the trust fund officer at Plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to Plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of Court. If the funds in Plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in Plaintiff's account, and forward them to the Clerk of Court. On each occasion that funds are subsequently credited to Plaintiff's account, the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $350.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment.

All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee, 167 N. Main, Room 242, Memphis, TN 38103

and shall clearly identify Plaintiff's name and the case number on the first page of this order.

If Plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately of his change of address. If still confined he shall provide the officials at the new prison with a copy of this order.

If Plaintiff fails to abide by these or any other requirement of this order, the Court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at Plaintiff's prison. The Clerk is further ORDERED to forward a copy of this order to the warden of the WTSP to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.

The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2). The Clerk shall not issue process or serve any papers in this case.

II. Analysis of Plaintiff's Claims

On January 21, 1994, Franklin pled guilty to second degree murder and especially aggravated robbery in the Shelby County, Tennessee Criminal Court. Pursuant to the terms of a negotiated plea, he was sentenced to thirty-five (35) years imprisonment as a Range II offender for the murder conviction and twenty (20) years as a Range I offender for the robbery conviction, to run concurrently. In 1996, Franklin filed a petition for post-conviction relief which was denied after an evidentiary hearing and a petition for writ of error coram nobis which was dismissed by the trial court. The Tennessee Court of Criminal Appeals affirmed the denial of relief. State v. Franklin, 1998 WL 424559 (Tenn. Crim. App. July 29, 1998).

According to the complaint and its various attachments, Franklin had his first parole hearing in July of 2001. Plaintiff's parole prediction score was "7." His parole was denied until July

of 2011 based upon the seriousness of his offense. (Docket Entry ("D.E.") 1, attachment 1.)

The inmate's next parole hearing was held in August of 2005, at which time his parole prediction score was "6," and his institutional security level was minimum. Defendant Ronnie Cole mentioned a disciplinary conviction which Plaintiff received in 2000. Plaintiff alleges the conviction was not raised during the 2001 hearing and should not have been considered due to its age. He also had received a disciplinary conviction in February of 2002 which was not mentioned. Plaintiff was again denied parole for six years, until August of 2011, based upon the seriousness of the offense.

Franklin asserts that the decisions to decline parole on the basis of the seriousness of the offense are inconsistent with the Board's parole release guidelines. He argues that his rights to equal protection have been violated by virtue of the fact that the Board has released other inmates, who were convicted of serious crimes and who scored higher on the risk assessment scale used by the Board.

Plaintiff seeks declaratory and injunctive relief and compensatory and punitive damages.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B). Plaintiff's complaint is subject to dismissal in its entirety.

Prisoners have no constitutional right to be released on parole before the expiration of their sentences. Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979); Inmates of Orient Correctional Inst. v. Ohio State Adult Parole Auth., 929 F.2d 233, 235 (6th Cir. 1991). The relevant statutes provide no expectation of release on parole:

> Release on parole is a privilege and not a right, and no inmate convicted shall be granted parole if the board finds that:
>
> (1) There is a substantial risk that the defendant will not conform to the conditions of the release program;
>
> (2) The release from custody at the time would depreciate the seriousness of the crime of which the defendant stands convicted or promote disrespect for the law;
>
> (3) The release from custody at the time would have a substantially adverse effect on institutional discipline; or
>
> (4) The defendant's continued correctional treatment, medical care or vocational or other training in the institution will substantially enhance the defendant's capacity to lead a law-abiding life when given release status at a later time.

Tenn. Code Ann. § 40-35-503(b) (emphasis added); see also Tenn. Code Ann. § 40-28-117(a) ("Parole being a privilege and not a right, no prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board is of the opinion that there is reasonable probability that such prisoner, if released, will live

and remain at liberty without violating the law, and that the prisoner's release is not incompatible with the welfare of society.").

Because Tennessee's statutory scheme places the decision to grant parole within the complete discretion of the parole board, inmates have no state-created liberty interest in parole. See Seagroves v. Tennessee Bd. of Probation & Parole, 86 F. App'x 45 (6th Cir. 2003); Rowan v. Traughber, 48 F. App'x 489, 490-91 (6th Cir. 2002); Berry v. Traughber, 48 F. App'x 483, 484 (6th Cir. 2002) ("Berry has neither an inherent constitutional right to parole nor a protected liberty interest created by mandatory state parole laws."); Wright v. Trammell, 810 F.2d 589 (6th Cir. 1987) (per curiam) (Tennessee law creates no liberty interest in parole); State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); Grimes v. State, No. W2004-02897-CCA-R3-PC, 2005 WL 1249060, at *2 (Tenn. Crim. App. May 25, 2005); Davis v. Maples, No. M2002-02564-COA-R3-CV, 2003 WL 22002660, at *4 (Tenn. Ct. App. Aug. 25, 2003); Pipher v. Tennessee Bd. of Parole, No. M2000-01509-COA-R3-CV, 2002 WL 31443204, at *3 (Tenn. Ct. App. Nov. 1, 2002); Kaylor v. Bradley, 912 S.W.2d 728, 733 (Tenn. Ct. App. 1995); Wells v. Tennessee Bd. of Paroles, 909 S.W.2d 826, 828 (Tenn. Ct. App. 1995); see also Sweeton v. Brown, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc) ("After Olim and Inmates, it became clear that procedural statutes and regulations governing parole do not create federal procedural due process rights. . . . The parole authorities in the State of Michigan may have been required to follow their own procedural statutes and

regulations on parole as amplified in the consent decree as a matter of state law, but there is not now any viable legal theory by which Michigan state authorities are require to follow such procedural rules as a matter of federal due process.") (emphasis in original). As Tennessee prisoners have no liberty interest in release on parole, they cannot challenge the procedures used to deny parole. Olim v. Wakinekona, 461 U.S. 238, 249-50 (1983); Rowan, 48 F. App'x at 491; Berry, 48 F. App'x at 485; Inmates of Orient Correctional Inst., 929 F.2d at 237-38; Chilton v. White, No. 2:04-CV-269, 2005 WL 1594574, at *1 (E.D. Tenn. July 6, 2005) ("Absent an inherent constitutional right to parole or a protected liberty interest created by state law, the plaintiff has no due process claim based upon the denial of an earlier parole eligible date.").

Finally, Plaintiff contends that his right to Equal Protection has been violated because the Board has released other inmates who were convicted of serious crimes and who scored higher on the risk assessment scale used by the Board. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." Henry v. Metropolitan Sewer Dist., 922 F.2d 332, 335 (6th Cir. 1990) (quoting Johnson v. Morel, 876 F.2d 477, 479 (5th Cir. 1989) (en banc )).[1] If the plaintiff is a member of a class that is not "protected," the

[1] Alternatively, a plaintiff may allege that the challenged action unduly burdens the exercise of a fundamental right. For the reasons previously stated, however, release on parole is not a fundamental right. See supra p. 6.

plaintiff's class "merits constitutional protection only insofar as the state actor could have had no conceivable rational basis for distinguishing it." Purisch v. Tennessee Technological Univ., 76 F.3d 1414, 1424 (6th Cir. 1996).

In this case, the complaint does not allege that Plaintiff was discriminated against because of his membership in a protected group. The law is clear that prisoners are not a protected class for equal protection purposes. See, e.g., Harbin-Bey v. Rutter, 420 F.3d 571, 576 (6th Cir. 2005); Hampton v. Hobbs, 106 F.3d 1281, 1286 (6th Cir. 1997). Under Tennessee law, "parole decisions are made on an individual, case-by-case assessment, as required by statute, not by comparatively ranking offenders." Henderson v. Traughber, No. M2002-02358-COA-R3-CV, 2003 WL 21642765, at *2 (Tenn. Ct. App. July 14, 2003) (citations omitted), perm. app. denied (Tenn. Dec. 8, 2003). Where the defendant's decision or action is justified by legitimate, non-discriminatory grounds, there can be no equal protection violation in the absence of discriminatory intent. Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 270 n.21 (1970). The complaint does not contend that any Defendant intentionally discriminated against Plaintiff because of his membership in a protected class. Therefore, he has no viable Equal Protection claim based on the release of other inmates. Sherman v. Bredesen, No. 05-6402, slip

op. at 4-5 (6th Cir. Oct. 30, 2006); Berry, 48 F. App'x at 485; see also Carnes v. Engler, 76 F. App'x 79, 81 (6th Cir. 2003).[2]

The Supreme Court's decision in Wilkinson v. Dotson, 544 U.S. 74 (2005), does not alter this conclusion. The sole issue in Wilkinson was whether inmates were required to bring their challenges to the constitutionality of state parole procedures in habeas petitions or whether such claims were cognizable in actions pursuant to 42 U.S.C. § 1983. The Supreme Court held that state prisoners could bring challenges to state parole procedures under 42 U.S.C. § 1983. The Court did not have occasion to consider the merits of the plaintiffs' underlying claims and, in particular, the case did not concern whether any state's laws created a liberty interest in parole. The decision in Wilkinson, therefore, has not provided Franklin with a viable claim.

The Court therefore DISMISSES the complaint in its entirety, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted. As the case is being dismissed, the motion for appointment of counsel is DENIED.

---

[2] Plaintiff does not argue that the Board members who made the decision to deny his release on parole also voted on the parole applications of the various other inmates listed in the additional materials submitted by Plaintiff.

III. Appeal Issues

The next issue to be addressed is whether Plaintiff should be allowed to appeal this decision in forma pauperis. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. Id. Accordingly, it would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, yet has sufficient merit to support an appeal in forma pauperis. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff is not taken in good faith and Plaintiff may not proceed on appeal in forma pauperis.

The final matter to be addressed is the assessment of a filing fee if Plaintiff appeals the dismissal of this case.[3] In McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, Plaintiff is instructed that, if he wishes to take

[3] Effective April 9, 2006, the appellate filing fee increased from $255 to $455.

advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in McGore and § 1915(b).

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by this plaintiff, this is the first dismissal of one of his cases as frivolous or for failure to state a claim.

IT IS SO ORDERED this 11th day of July, 2007.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE